IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| ROBERT MORRIS, SR., | ) | 1:22-CV-00082-RAL |
| | ) | |
| Plaintiff | ) | |
| | ) | RICHARD A. LANZILLO |
| vs. | ) | Chief United States Magistrate Judge |
| | ) | |
| REBECCA SCHEUER, REVEREND | ) | MEMORANDUM OPINION ON |
| LUCAS HAFELI, PA DEPARTMENT OF | ) | DEFENDANTS' MOTION TO DISMISS |
| CORRECTIONS, | ) | |
| | ) | |
| Defendants | ) | ECF NO. 16 |
| | ) | |

MEMORANDUM OPINION

## I.  Introduction and Procedural History

Plaintiff Robert Morris, Sr. ("Morris"), a prisoner incarcerated at the State Correctional Institution at Albion ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the Pennsylvania Department of Corrections ("DOC"), SCI-Albion counselor Rebecca Scheuer, and SCI-Albion chaplain Rev. Lucas Hafeli ("Defendants").  Morris's complaint alleges that Defendants substantially burdened his First Amendment right to practice his Rastafari religion and denied him equal protection in violation of the Fourteenth Amendment when they prohibited him from wearing a "religious crown."  ECF No. 12, ¶¶ 11, 17-20. Because Morris proceeds *pro se*, the Court will treat his allegations as also raising a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et

1

seq.[1]  Morris seeks compensatory and punitive damages from Scheuer and Hafeli, declaratory

relief, and an injunction "ordering that [the DOC] cease and desist their denial of access to

practice religious beliefs." *Id.*, ¶¶ 21-27.

Defendants responded to the complaint by filing a motion to dismiss all claims pursuant

to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 16) and accompanying brief (ECF No.17).

Morris has filed a response in opposition to the motion.  ECF No. 22.  For the reasons that

follow, the motion will be GRANTED in part and DENIED in part.

## II.    Factual Background

The factual allegations of Morris's complaint are few and, for purposes of the pending

motion, accepted as true.  *See Victor v. Overmyer*, 2020 WL 2220541, at *2 (W.D. Pa. Mar. 16,

2020), *report and recommendation adopted*, 2020 WL 2220128 (W.D. Pa. May 7, 2020) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  His claims arise primarily out of his interaction

with SCI-Albion Unit Manager Rebecca Scheuer regarding his wearing of a headpiece as part of

his Rastafari religion.  According to the complaint, on July 1, 2021, Morris was wearing a

religious crown "flush to [his] head" and "legally per DC-ADM Policy," when "Scheuer told

[him] to get rid of [his] religious crown because she deemed it to be contraband."  ECF No. 12,

¶¶ 7, 8, 15.  The complaint further alleges that Rev. Hafeli observed this interaction but did not

intervene or "deny Scheuer's claim of contraband."  *Id.*, ¶ 9.  Based on this interaction, Morris

concluded that he "had no choice but to discard his religious article."  *Id.*  While the complaint

---

[1] *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Kennedy v. Nat'l Juvenile Det. Ass'n.*, 187 F.3d 690, 695 (7th Cir. 1999) (a pro se litigant "does not necessarily have to point to the proper statute in order to state a cause of action to which he is entitled relief.").

alleges that Morris wrote to Rev. Hafeli about the incident three days later, it does not disclose

the substance of this communication or state whether Rev. Hafeli responded. Morris does allege,

however, that Hafeli "agreed" with Scheuer's assessment, "did not deny [her] claim of

contraband," or "make[] a report about Defendant Scheuer's actions." *Id.*, ¶¶ 9, 19.

The complaint also alleges that the DOC does not permit "services or religious articles

anymore for the Rastafri [sic] religion" and generally asserts that the DOC "shows favoritism to

the Islamic, Christian, and Jewish Faiths." *Id.*, ¶¶ 10, 13, 14. However, it does not identify any

Rastafari service or article that the DOC has prohibited other than Scheuer's designation of

Morris's religious crown as prohibited contraband on July 1, 2021. In his brief in opposition to

Defendants' motion, Morris acknowledges that other Rastafari inmates are permitted to wear

their religious crowns. ECF No. 22. This acknowledgement indicates that something particular

to Morris's religious crown prompted Scheuer to designate it as contraband or that she singled

out Morris for this action.

### III.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In

deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual

allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S.*

*Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally

consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of

public record, and documents that form the basis of a claim" when considering the motion to

dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Iqbal*, 556 U.S. 662. Furthermore, a complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need to provide detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*,

404 U.S. 519, 520-521 (1972).  If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

### IV.   Analysis

Defendants argue that Morris's complaint fails to state a claim against them because (1) the individual Defendants, acting in their official capacities, and the DOC are not "persons" within the meaning of 42 U.S.C. § 1983, (2) the facts alleged do not support Rev. Hafeli's personal involvement in any actionable conduct, (3) the facts alleged do not support a plausible inference that any Defendant unlawfully impeded Morris's religious rights, and, alternatively, (4) the individual Defendants are entitled to qualified immunity.  Defendants also argue that the complaint fails to allege facts to support a Fourteenth Amendment equal protection claim against the DOC.  The Court will address each argument in turn.

> **A.  Scheuer and Rev. Hafeli, in their official capacities, and the DOC are not "persons" subject to suit under §1983 to the extent Morris's complaint seeks money damages or other retrospective relief, but Scheuer and Rev. Hafeli, in their official capacities, are subject to suit under §1983 to the extent the complaint seeks prospective injunctive or declaratory relief.**

The Commonwealth of Pennsylvania "is not a 'person' subject to suit" under 42 U.S.C. § 1983.  *Whiteford v. Penn Hills Municipality*, 323 Fed. Appx. 163, 166 (3d Cir. 2009) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 69–70 (1989) (states or governmental entities that are "arms of the State" are not "persons" for purposes of section 1983).  The DOC "is a part

of the executive department of the Commonwealth," and thus an entity of the Commonwealth. *Pettaway v. SCI Albion,* 487 Fed. Appx. 766, 768 (3d Cir. 2012); *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing Pa.Stat.Ann., tit. 71, § 61).  As such, it also is not a person subject to suit under section 1983.  *See Adams v. Hunsberger*, 262 Fed. Appx. 478, 481 (3d Cir. 2008).  Furthermore, a "claim against a state actor in his or her official capacity is tantamount to lodging the claim against the state itself, since it is the real party in interest." *Francis ex rel. Est. of Francis v. Northumberland Cnty.*, 636 F. Supp. 2d 368, 385–86 (M.D. Pa. 2009) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  Therefore, except as discussed below, a claim against a DOC official in his or her official capacity is likewise not cognizable under § 1983.  *See Alston v. Nat'l Conf. of Bar Examiners*, 314 F. Supp. 3d 620, 626 (E.D. Pa. 2018) (holding that "[n]either a State nor its officials acting in their official capacities are persons under § 1983") (quoting *Hafer v. Melo*, 502 U.S. 21, 26 (1991)).  In addition, the Eleventh Amendment to the United States Constitution proscribes actions for money damages in the federal courts against states, their agencies, and state officials acting in their official capacities.  *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity).

The foregoing principles preclude a § 1983 claim for money damages against the DOC as well as its officials and employees in their official capacities.  But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  *Will*, 491 U.S. at 71 n. 10 (1989) (citations omitted).  And "claims requesting prospective injunctive relief from official-capacity defendants do not run afoul of sovereign immunity."  *See Iles v. de*

*Jongh*, 638 F.3d 169, 177 (3d Cir.2011) (citing *Perry v. Pennsylvania Dep't of Corr.*, 441 Fed. Appx. 833, 836 (3d Cir. 2011)).  To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective...." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)).  In determining whether the Eleventh Amendment bars the claim, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted).  "This exception to the Eleventh Amendment is a very narrow one, permitting plaintiffs to seek prospective relief, and only when a state official and not the State or a state agency is the named defendant." *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 483 (D.N.J. 2001) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).  "The exception has no application where the lawsuit, although naming a state official, is more correctly construed as a suit against the State, which is completely barred by the Eleventh Amendment regardless of the relief sought." *Id.*

Complicating the application of the foregoing principles to this case, Morris's complaint does not clearly specify the capacity of each individual Defendant against whom Morris asserts his respective claims.  In the caption of his complaint, Morris indicates that he is suing the Defendants "individually and in their official capacity."[2] ECF No. 12.  The balance of the

---

[2] The complaint appears to distinguish between the DOC acting in its "official" vs. its "individual" capacity.  Of course, the Commonwealth of Pennsylvania and its agencies, including the DOC, have no "individual" capacity.  And because a claim against a DOC official in his or her official capacity is a claim against the Commonwealth, Morris's naming of the DOC as a Defendant in this action is largely superfluous. *See Will*, 491 U.S. at 71; *Francis ex rel. Est. of Francis*, 636 F. Supp. 2d at 385–86.

complaint, including his request for relief, does not distinguish between Morris's individual capacity and official capacity claims against Scheuer and Rev. Hafeli. It demands compensatory and punitive damages against Scheuer and Rev. Hafeli. *Id.*, ¶ 23. But the complaint states that he is suing the DOC "for injunctive and declaratory relief only." *Id.*, ¶ 6. His requests for declarative and injunctive relief are also somewhat vague. He seeks "a declaration that the acts and omissions described [in the complaint] violate his rights under the Constitution and the laws of the United States." *Id.*, ¶ 21. He also seeks "a preliminary and permanent injunction ordering the DOC to cease and desist their denial of access to practice religious beliefs." *Id.*, ¶ 22. Because the complaint does not identify any challenged action other than the designation of his religious crown as contraband, the Court will construe his request for declaratory relief as limited to Defendants' continuing denial of his ability to wear that or similar religious headwear.[3]

Because Morris has disclaimed any claim for money damages against the DOC, Defendants' motion to dismiss is moot to the extent it seeks dismissal of such a claim. To the extent the complaint asserts claims for money damages against Scheuer and Rev. Hafeli in their official capacities, those claims will be dismissed. Morris's claim for injunctive relief against Scheuer and Rev. Hafeli in their official capacities may proceed as to the alleged continuing prohibition of his wearing of his religious crown, but the facts currently alleged in the complaint do not support injunctive or declaratory relief beyond that. Finally, Morris's claims for money

---

[3] Morris's assertions that the DOC does not permit "services or religious articles anymore for the Rastafri [sic] religion" and that the DOC "shows favoritism to the Islamic, Christian, and Jewish Faiths," *see* ECF No. 12., ¶¶ 10, 13, 14, are too conclusory to support injunctive or declaratory relief. Other than Scheuer's designation of Morris's religious crown as prohibited contraband on July 1, 2021, he does not identify any Rastafari service or article that any official of the DOC has prohibited. Moreover, Morris acknowledged in his brief that other Rastafari inmates are permitted to wear their religious crowns. *See* ECF No. 22. Thus, his brief belies that SCI-Albion bars all Rastafari religious practice and implies that something particular to his crown prompted Scheuer to designate it as contraband. His brief also acknowledges that the DOC has a policy accommodating religious practices and traditions subject to certain restrictions based on safety and security. He does not allege that the policy has prevented him from any religious exercise other than the wearing of his crown.

damages against Scheuer and Rev. Hafeli in their individual capacities are permissible under § 1983. As discussed below, however, all of Morris's claims against Rev. Hafeli fail because the complaint's allegations fail to support his personal involvement in any violation of Morris's constitutional or statutory rights.

### B. The allegations of the complaint do not support Rev. Hafeli's personal involvement in prohibiting Morris from wearing his religious crown.

Defendants submit that Morris's religious rights claims against Reverend Hafeli fail because the complaint does not plead facts sufficient to support Hafeli's personal involvement in any actionable conduct. To prevail on a claim pursuant to § 1983, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Est. of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. It is axiomatic that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *See Gould v. Wetzel*, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

When the defendants are supervising prison officials, liability must still be based on "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Nor can Section 1983 liability be predicated solely on the theory of *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362 (1976). *See also Monell v. Department of Soc. Services*, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's actions); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that § 1983 plaintiff is required to show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Here, Reverend Hafeli's role is recorded in the first three paragraphs of the complaint's short factual recitation. Morris first avers that on July 4, 2021, he wrote a letter to Reverend Hafeli about his July 1, 2021 interaction with Scheuer. He then describes this interaction, writing:

> The incident took place on July 1, 2021, where Defendant Rebecca Scheuer told me my religious crown was contraband *in front of Defendant Reverend Hafeli who said nothing*, while Defendant Rebecca Scheuer told me to get rid of my religious crown because she deemed it to be contraband.
>
> *Defendant Hafeli agreed and did not deny Defendant Scheuer's claim of contraband.*

ECF No. 12, ¶¶ 8-9 (emphasis added).  This description of events does not support that Rev. Hafeli played an "affirmative part" in prohibiting Morris from wearing of his religious crown. Instead, the allegations largely cast Rev. Hafeli as an observer to the conduct of Scheuer. Although Morris alleges that he agreed with Scheuer's assessment that his crown was contraband, he does not allege any facts to support that it was his decision to preclude him from wearing the crown or that he confiscated the crown.  The facts alleged also do not support that Rev. Hafeli had supervisory authority over Scheuer or decisions regarding religious attire.  The allegations likewise do not support that he set policy within the DOC or SCI-Albion concerning religious attire.  The allegations concerning Rev. Hafeli largely describe his inaction in response to Scheuer's actions rather any affirmative involvement.  These allegations are insufficient to support an inference that Rev. Hafeli was personally involved in confiscating or otherwise prohibiting Morris from wearing his religious crown.  *Cf. Sutton v. Rasheed*, 323 F.3d 236 (3d Cir. 2003) ("Father Menei appear[ed] to have played an active role" in denying Plaintiff access to Nation of Islam texts because, in denying Plaintiffs' grievance, he wrote "[w]e have determined the books are not essentially religious in nature . . .these books smack of racism and hatred, and I know of no God that wants us to worship him in this way."); *Yah'torah v. Hicks*, 2018 WL 6417134, at *1 (D.N.J. Dec. 4, 2018) (personal involvement of Imam R. Suluki, the New Jersey Supervisor of Chaplaincy Services, was sufficiently alleged because he issued memoranda and letters to Plaintiff setting out the NJSP policy that was invoked to deny Plaintiff's request to use oils as part of his Jewish practice).  Accordingly, all claims against Rev. Hafeli will be dismissed.

**C. Morris has stated a First Amendment free exercise of religion claim against Scheuer.**

The Free Exercise Clause of the First Amendment provides, *inter alia,* that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." U.S. Const. amend. 1.  The Supreme Court has explained that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) (citations omitted).  As a threshold matter for a free exercise claim, the court must determine "whether the prisoner has alleged a belief that is 'both sincerely held and religious in nature.'" *Heleva v. Kramer*, 214 Fed. Appx. 244, 246 (3d Cir. 2007) (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc)).  When assessing this issue, "[i]t is inappropriate for a reviewing court to attempt to assess the truth or falsity of an announced article of faith." *Afr. v. Com. of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981).  Furthermore, "the law is clear that a religious practice is protected even if it is not deemed to be mandatory or practiced by every member of the religion." *Daley v. Lappin*, 555 Fed. Appx/ 161, 164 (3d Cir. 2014) (citing *Thomas v. Review Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981) and *DeHart*, 227 F.3d at 56).  The Supreme Court has stressed, however, that "while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.'" *Afr.*, 662 F.2d at 1030 (quoting *United States v Seeger*, 380 U.S. 163, 185 (1965).

Examined in their entirety and construed liberally, Morris's allegations support a reasonable inference that he wears his "religious head garment" or "sacred crown" as part of his sincerely held Rastafarian religious beliefs, although the Court notes that his complaint does not

specifically allege that he follows Rastafarian religious beliefs and practices.[4] ECF No. 12, ¶¶ 18, 12.  Thus, the complaint satisfies the "sincerely held" and "religious in nature" elements of his First Amendment claim.

Defendants argue that Scheuer's alleged actions were not "unconstitutional in nature" because the complaint "does not indicate that [Morris] sought and was granted an accommodation to wear religious headgear," as required by DC-ADM 819.  Defendants further argue that, even if Morris had the requisite permission, the complaint fails to state that Defendants knew he had permission.  Defendants' arguments are without merit.

First, the complaint alleges that Morris's crown was "legally his per-DC-ADM Policy." ECF No. 12, ¶ 15.  As a matter of general DOC policy, DC-ADM 819 states:

> It is the policy of the Department to accommodate inmates' religious beliefs consistent with the security needs and orderly administration of the facility by providing for the orderly management of religious opportunities for all inmates under the Department's jurisdiction.

DC-ADM 819 (III).

Specifically, regarding religious headgear, DC-ADM 819 states:

4.  Religious Headgear

---

[4]  The Court also notes that judicial opinions in this district have referenced the wearing of a religious headpiece as a part of Rastafari practice.  *See Jean-Pierre v. Bureau of Prisons*, 2012 WL 707095, at *11 (W.D. Pa. Feb. 13, 2012), *report and recommendation adopted*, 2012 WL 707088 (W.D. Pa. Mar. 5, 2012), *aff'd*, 497 Fed. Appx. 164 (3d Cir. 2012) ("Plaintiff was able to participate in other Rastafarian religious practices, such as . . . wearing headgear known as a 'crown.'"); *DeHart v. Lehman*, 9 F. Supp. 2d 539, 543 (E.D. Pa. 1998) (citing *Benjamin v. Coughlin*, 905 F.2d 571 (2d Cir.1990)) ("prison regulation restricting the wearing of 'crowns' by inmate Rastafarians did not violate the First Amendment because crowns posed legitimate security concerns for prison officials"); *Gayle v. Harmon*, 207 F. Supp. 3d 549, 554 n.29 (E.D.A. 2016) ("Plaintiff testified in his deposition that he was denied the ability to wear a Rastafarian 'head garment' called a crown"); *Doss v. Bureau of Prisons*, 2021 WL 5238794, at *19 (M.D. Pa. Oct. 8, 2021), *report and recommendation adopted in part, rejected in part sub nom.* DARNELL DOSS, Plaintiff, v. BUREAU OF PRISONS, et al., Defendants., 2021 WL 5233315 (M.D. Pa. Nov. 10, 2021) (citing Program Statement 5360.09 *available at* https://www.bop.gov/policy/progstat/5360_009.pdf (last visited Sept. 21, 2021)) ("Defendants cite to BOP Program Statement 5360.09," which allows inmates to wear a "Rastafarian crown" that is "black with red, yellow and green threads running through it," as opposed to the color requirements imposed on other religious headgear).

    a.  Religious headgear (e.g., hijab, kufi, yarmulke, leather headband, etc.) purchased from an approved vendor or donated to the Religious Services Department since March 27, 2007 must be white in color.  If headgear previously approved and in the possession of an inmate is deemed to present a security concern, the inmate can elect to send the object home at his/her expense or the sacred object will be destroyed.

    b.  Religious headgear must fit flush to the head.

    c.  Inmates employed in Food Services may wear religious headgear, but the headgear must be kept clean and be completely covered by a hair restraint approved for use in Food Services.

    d.  Inmates are permitted to wear religious headgear in all areas of the facility unless there is a documented hygienic, safety or security concern (e.g. the Visiting Room)

The complaint sufficiently alleges that Morris's religious crown complied with the foregoing policies and requirements and nothing presently in the record supports a finding that it did not.  DC-ADM 819 provides a procedure for an inmate to designate or change his religious preference as well as procedures for requesting religious accommodations for religious practices, meals, or items not already authorized in the policy.  The record in this case presently does not support an inference that Morris's religious crown was noncompliant with any policy.  Indeed, DC-ADM 819 acknowledges that "the [DOC] does not ordinarily require an inmate to profess a religious belief, when the nature of the religious activity or practice (e.g., attending a holy day observance, participating in a sacred ritual/religious fast/ceremonial meal, ordering or possessing religious devotional articles and/*or wearing religious headgear*, etc...."  DC-ADM 819, Section 1 (A)(9).  Nevertheless, Defendants appear to argue that Morris needed to allege facts to show that he requested a religious accommodation to wear his religious crown because it is not listed in the policy's catalog of DOC-approved religious items that inmates may purchase. Neither the facts of this case nor DC-ADM 819 is sufficiently clear that the Court can hold as a

matter of law that Morris's crown was, in fact, contraband or otherwise prohibited under the policy.  Although Morris acknowledges that Scheuer designated the crown as contraband, the record does not disclose the basis for this assessment.  Furthermore, construing Morris's allegation that the crown was "legally his per-DC-ADM Policy" liberally, he has sufficiently alleged compliance with the policy.  ECF No. 12, ¶ 15.  Accordingly, Defendants' arguments regarding Morris's compliance with DC-ADM 819 will have to await a more developed record.  And, even if prohibited by the policy, the Defendants would still need to demonstrate that the regulation is reasonably related to legitimate penological interests, such as prison security.  *See Turner v. Safley*, 482 U.S. 78, 90, (1987).[5]  The present record is too undeveloped to allow the Court to make this assessment.

Defendants also argue that, assuming Morris obtained a religious accommodation for his crown, Scheuer had no way of knowing this.  This argument is also unsupported by the current record.  Furthermore, it is largely irrelevant.  At this stage of the case, the question is not whether Scheuer believed Morris had or had not requested a religious accommodation.  The issue is whether her confiscation of Morris's religious crown substantially burdened the exercise of his Rastafari religion without justification of a legitimate penological interest supporting her actions.  Morris's allegations, although thin, state a First Amendment free exercise claim against Scheuer.

---

[5] Under *Turner v. Safley*, a prison regulation or prison official's conduct may burden an inmate's First Amendment rights if it is "reasonably related to legitimate penological interests." 482 U.S. at 89. *See also Heleva v. Kramer*, 214 Fed. Appx. 244, 247 (3d Cir. 2007) ("Although the *Turner* test was articulated in the context of challenges to prison regulations, as opposed to challenges to individual conduct, the analysis in the later context is the same."). However, Defendants have not actually argued a justification for Scheuer's conduct, and even if they had, the record is not sufficiently developed to allow the Court to determine whether application of the *Turner* factors defeats Morris's claim. *See Ramirez v. Pugh*, 379 F.3d 122, 126–30 (3d Cir. 2004) (reversing grant of a motion to dismiss and remanding for development of the factual record); *Enoch v. Perry*, 2020 WL 4057643, at *10 (W.D. Pa. July 20, 2020) (slip copy) ("The *Turner* analysis is exceedingly fact-intensive and does not lend itself to resolution on a motion to dismiss."); *Dean v. Tice*, 2020 WL 3037194, at *3 (W.D. Pa. May 13, 2020), *report and recommendation adopted by*, 2020 WL 3036630 (W.D. Pa. June 5, 2020).

*See  Abbott v. Smaller*, 1990 WL 131359 (E.D. Pa. 1990) (awarding damages to a Muslim

inmate after defendant refused to allow him to eat dinner when he would not remove his kufi, a

Muslim religious headdress); *Butts v. Martin*, 877 F.3d 571 (5th Cir. 2017) (defendant not

entitled to summary judgment on Hasidic Jewish prisoner's claim officer violated his free

exercise rights by forcing him to choose between eating a meal and wearing his yarmulke).

### D.  Morris has stated a RLUIPA claim against Scheuer in her official capacity.

RLUIPA does not permit actions against state officials in their individual capacities, *see*

*Sharp v. Johnson*, 669 F.3d 144, 153–55 (3d Cir. 2012), and the states have "not consent[ed] to

waive their sovereign immunity to private suits for money damages" under the statute.

*Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *see also Adams v. Corr. Emergency Response*

*Team*, 857 Fed. Appx. 57, 60 (3d Cir. 2021) (per curiam).  Instead, "[a] RLUIPA cause of action

is an official-capacity claim for declaratory and injunctive relief." *Barros v. Wetzel*, 2015 WL

5785746, at *4 (M.D. Pa. Sept. 29, 2015); *see also Small v. Wetzel*, 528 Fed. Appx. 202, 208 (3d

Cir. 2013).  Therefore, Morris's RLUIPA claim is potentially viable only as an official capacity

claim for injunctive or declaratory relief.

"Congress passed RLUIPA to grant heightened protection to prisoners from burdens

imposed by the government." *Washington v. Klem*, 497 F.3d 272, 276 (3d Cir. 2007); *see also*

*Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015).  "Section 3 of RLUIPA states that 'no government

shall impose a substantial burden on the religious exercise of a person residing in or confined to

an institution[,] even if the burden results from a rule of general applicability,' unless the

government demonstrates that the burden is 'in furtherance of a compelling governmental

interest' and is 'the least restrictive means of furthering that interest.'" *Washington*, 497 F.3d at

277 (alterations omitted) (quoting 42 U.S.C. § 2000cc-1(a)).  RLUIPA authorizes prisoners to

seek religious accommodations. *Holt*, 135 S. Ct. at 860 (quoting *Gonzales*, 546 U.S. at 429). "[A] prisoner's request for an accommodation [under RLUIPA] must be sincerely based on a religious belief and not some other motivation." *Id.* at 862. Thus, "RLUIPA claims in the prisoner context requires a case-specific consideration of the particular circumstances and claims." *Ramirez v. Collier*, — U.S. —, 142 S. Ct. 1264, 1283 (2022).

"Under RLUIPA, [the plaintiff] bears the 'initial burden' of showing that (1) he has a sincerely held religious belief ..., and (2) the prison substantially burdened the exercise of his belief...." *Watson v. Christo*, 837 Fed. Appx. 877, 880 n.6 (3d Cir. 2020) (citing *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015); 42 U.S.C. § 2000cc-1(a)). If the plaintiff "produces prima facie evidence to support a claim ... the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc–2(b).

RLUIPA does not define "substantial burden," but courts have found that "a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit;" or "2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington*, 497 F.3d at 280. For purposes of RLUIPA, "Congress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)). Indeed, "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).

Still, RLUIPA's scope is not endless, because the statute's text commands that not any or all burdens on religion are covered, only "substantial" ones. *See Washington*, 497 F.3d at 281 (3d Cir. 2007) (citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (stating, in the land use context, that "[a]pplication of the substantial burden provision to a regulation inhibiting or constraining any religious exercise ... would render meaningless the word 'substantial'")).

Applying the foregoing standards to this case, Morris has alleged facts sufficient to support a plausible inference that Scheuer's actions substantially burdened the exercise of his sincerely held religious belief. Although Morris's allegations regarding his adherence to the Rastafari religion are somewhat opaque, they do minimally support that the wearing of a sacred crown is a facet of his Rastafari religious practice and that by prohibiting him from doing so Scheuer required him to substantially modify his behavior and to violate his beliefs. Morris's allegations also support an inference that he would have faced disciplinary action if he continued to wear and refused to destroy his headpiece in response to Scheuer's order. Although Scheuer's order is alleged to have impacted only one aspect of Morris's religious exercise, it may reasonably be found to have substantially burdened such exercise. *See Richardson v. Clarke*, 52 F.4th 614, 624 (4th Cir. 2022) (Plaintiff's "sincere religious belief that he wear his kufi, a religious head covering, in all areas of Deerfield" was substantially burdened by VDOC policy "requir[ing] Richardson to either violate his religious beliefs—by refraining from wearing a head covering at all times—or risk discipline at Deerfield for violating the policy."); *Boles v Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007) (inmate supported claim that his inability to wear a yalmulke was a "substantial burden by alleging that 'according to ... Jewish Law, Jewish males are required to wear a head covering at all times.'"); *Barnes v. Furman*, 629 Fed. Appx. 52, 55–57

(2d Cir. 2015) ("confiscation of [Plaintiff's] Tsalot–Kob religious head covering" was a substantial burden); *Marshall v. Corbett*, 2019 WL 4741761, at *14 (M.D. Pa. Aug. 8, 2019), *report and recommendation adopted*, 2019 WL 4736224 (M.D. Pa. Sept. 27, 2019) (citing *Holt*, 574 U.S. 352) (DOC policy prohibiting Plaintiff from "wear[ing] his Nation of Islam fez" substantially burdened his religious practice); *Hogan v. Idaho State Bd. of Corr.,* 2018 WL 2224045, at *5 (D. Idaho May 15, 2018), 2018 WL 2224045, at *5 (inmate's religious exercise was substantially burdened by policy barring him from wearing kufi at certain times); *Browning v. Seifert*, 2015 WL 1280948, *12, *19 (N.D.W. Va. Mar. 20, 2015) ("defendants have placed a substantial burden on Browning's exercise of his religious beliefs as an Orthodox Jew by prohibiting him from wearing a yarmulke at all times"); *Ajala v. West*, 106 F. Supp. 3d 976, 981 (W.D. Wis. 2015) (If plaintiff's religious beliefs require him to wear his kufi "at all times," then a rule that allows plaintiff to wear his kufi "most of the time" imposes a substantial burden on his religious exercise because the rule requires him to "engage in conduct that seriously violates his religious beliefs.").

Where the plaintiff meets his initial burden, "the burden shifts to the prison to show that" the prison official's action "(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest." *Watson*, 837 Fed. Appx. at 880 n. 6 (quoting *Holt*, 574 U.S. at 362) (alterations in original) (quoting § 2000cc-1(a)). This analysis is not appropriately undertaken on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) based on "the pleadings alone" because the two elements of defendant's burden require "a fact-intensive inquiry" that typically cannot be satisfied "without at least creating a summary judgment record." *Robinson v. Superintendent Houtzdale SCI*, 693 Fed. Appx. 111, 117 (3d Cir. 2017). *See also Watson*, 837 Fed. Appx. at 880 n.7 (citing *United*

19

*States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011) ("[T]he government's burden is two-fold: it must support its choice of regulation, and it must refute the alternative schemes offered by the challenger, but it must do both through the evidence presented in the record.") (emphasis added)).  At present, neither the rationale for prohibiting Morris's religious crown as contraband nor information concerning the breath of the restriction is part of the record.  Based on the factual allegations of Morris's complaint that support the essential elements of his RLUIPA claim and the absence of any record to support Scheuer's burden, Defendants' motion to dismiss Morris's RLUIPA claim against Scheuer must be dismissed.

### E.  Scheuer is not entitled to qualified immunity based on the current record.

Defendants argue that even if the individual Defendants' conduct violated Morris's constitutional or federal statutory rights, qualified immunity shields them from suit because the right at issue was not clearly established at the time of their actions or omissions.  "The burden of establishing qualified immunity falls to the official claiming it as a defense." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011).  *See also, Harris v. Kellogg, Brown & Root Servs., Inc.*, 2016 WL 4720058, at *1 (W.D. Pa. Sept. 9, 2016) (Defendant "has the burden of proof on its affirmative defense of qualified immunity."); *Pruchnic v. Wright*, 2016 WL 1267812, at *10 (W.D. Pa. Mar. 30, 2016) (same); *Figueroa v. Mazza*, 825 F.3d 89, 113 (2d Cir. 2016) (same).[6]  Because the Court has already found Morris's allegations insufficient to support a claim against Rev. Hafeli, only Scheuer's potential qualified immunity defense remains at

---

[6] *Compare, Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) ("In the Fourth Circuit, we have a split burden of proof for the qualified-immunity defense. The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong."); *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) ("Once a defendant properly pleads qualified immunity, the burden of proof shifts to the plaintiffs to negate the defense."); *Wellington v. Daza*, 2022 WL 3041100, at *5 (10th Cir. Aug. 2, 2022) (same).

issue. Based on the record presently before the Court, Scheuer has failed to demonstrate her entitlement to qualified immunity.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity defense is traditionally analyzed in two steps. First, the court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, make out the violation of a constitutional or statutory right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Next, the court must examine whether the right at issue was "clearly established" at the time of the challenged conduct.[7] *Id.*

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (cleaned up) (citations omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "In determining whether a right is clearly established, [however,] it is not necessary that the exact set of factual circumstances has been considered previously." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 259–60 (3d Cir. 2010) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Even where the official faces novel circumstances, qualified immunity may be denied "as long as the law gave the defendant [] 'fair warning' that his conduct was unconstitutional." *Id.* (quoting *Kopec v. Tate*,

---

[7] The two prongs to the qualified immunity inquiry need not be analyzed in sequential order; courts have discretion to decide which of the two prongs to tackle first. *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

361 F.3d 772, 778 (3d Cir. 2004)).  But "[t]he rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 590 (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) (To be "clearly established," a right must be sufficiently clear such that a reasonable official in the position of the defendant would have known that his conduct was unlawful.).

Regarding the first step in the qualified immunity analysis, the Court has already determined that the facts alleged in the complaint support claims that Scheuer violated Morris's rights under First Amendment's free exercise clause and RLUIPA.  Regarding the second step, Defendants assert that no caselaw exists "to support the claim that prison officials must permit an inmate to wear a Rastafarian crown when he did not make such a request through proper channels and without specific information about the crown itself that would suggest it is not a security risk."  ECF No. 17, p. 7.  Defendants' observation, while probably accurate, mischaracterizes the record and issue currently before the Court.  The complaint alleges that Morris's sacred crown was compliant with prison policies and that Scheuer designated it as contraband and prohibited Morris from wearing it for no legitimate reason.  Thus, the issue presented by the record, as presently constituted, is whether clearly established law prohibited Scheuer's confiscation of Morris's crown without a policy justification for doing so.  The Court finds that it was.

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that [s]he was violating it."  *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).  That is, the legal rule must have been "dictated by controlling authority or a robust

consensus of cases of persuasive authority." *District of Columbia v. Wesby*, --U. S.--, 138 S. Ct. 577, 589-90, (2018) (internal quotation marks and citation omitted).  Here, a robust consensus of cases clearly established the illegality of prohibiting an inmate from wearing compliant religious headwear without an important policy justification for the prohibition.  *See Richardson v. Clarke*, 52 F.4th 614, 624 (4th Cir. 2022) (Plaintiff's "sincere religious belief that he wear his kufi, a religious head covering, in all areas of Deerfield" was substantially burdened by VDOC policy "requir[ing] Richardson to either violate his religious beliefs—by refraining from wearing a head covering at all times—or risk discipline at Deerfield for violating the policy."); *Boles v Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007) (denied qualified immunity to Defendant Prison Warden, who acted in accordance with prison regulations that "arbitrarily and capriciously impinge[d] on inmates' constitutional rights" when prohibiting inmate from wearing a head covering based on step one and two of the qualified immunity analysis); *Barnes v. Furman*, 629 Fed. Appx. 52, 55–57 (2d Cir. 2015) (citations omitted) ("District court erred in agreeing that Defendants "we[re] entitled to qualified immunity because there is no clearly established law permitting inmates to wear 'head coverings of their choice'"); *Butts v. Martin*, 877 F.3d 571 (5th Cir. 2017) (Summary judgment was not warranted for Defendants on Hasidic Jewish prisoner's claim officer violated his free exercise rights by forcing him to choose between eating a meal and wearing his yarmulke); *Khatib v. Cnty. of Orange*, 639 F.3d 898, 905 (9th Cir. 2011) (requirement that Plaintiff remove her headscarf substantially burdened her exercise of her Muslim practice); *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) ("By permitting inmates to wear Kufi caps and religious insignia in their cells and in religious services in the chapel, the TDJC has provided an opportunity for the exercise of religious freedoms as guaranteed by the Constitution."); *LeBaron v. Spencer*, 527 Fed. Appx. 25, 29 (1st Cir. 2013) (quoting *Cryer v.*

*Massachusetts Dept. of Correction*, 763 F.Supp.2d 237, 247 (D.Mass.2011)) ("Courts have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that ... exercise.").  *See also Browning v. Seifert*, 2015 WL 1280948, *12, *19 (N.D.W. Va. Mar. 20, 2015) (Qualified immunity was denied with respect to Plaintiff's claims regarding, *inter alia*, "permission to wear a yarmulke at all times;" "permission to wear religious clothing, including a tallit, tzizit, and yarmulke, during administrative or disciplinary segregation").  Accordingly, the present record does not support Scheuer's defense of qualified immunity and Defendants' motion to dismiss Morris's First Amendment and RLUIPA claims against her must be denied.

### F.   The facts alleged are insufficient to support a Fourteenth Amendment equal protection claim against the DOC.

Morris also argues that the DOC has violated his Fourteenth Amendment rights because "similarly situated inmates are permitted to practice their religious beliefs."  ECF No. 12, ¶ 20.  As previously discussed, Morris's complaint fails to state a constitutional claim against the DOC because the DOC is not a "person" subject to suit under § 1983.  This precludes Morris's equal protection claim against the DOC.  In addition, Morris's allegations are insufficient to support an equal protection violation against any party.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'"  *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Thus, "[t]reatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause."  *Jean-Pierre v. Bureau of Prisons*,

2012 WL 707095, at *15 (W.D. Pa. Feb. 13, 2012), *report and recommendation adopted*, 2012

WL 707088 (W.D. Pa. Mar. 5, 2012), *aff'd*, 497 Fed. Appx. 164 (3d Cir. 2012) (quoting *Klinger*

*v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir.1994)).   To establish a violation of the Equal

Protection Clause, a plaintiff must ordinarily allege "that he was treated differently than other

similarly situated inmates, and that this different treatment was the result of intentional

discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839

F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015)).

Morris has failed to show that similarly situated faiths are treated differently from

Rastafarians.  *See Smith v. Kyler*, 295 Fed. Appx. 479, 484 (3d Cir. 2008) (prisoner's Equal

Protection claim against DOC was dismissed because "he failed to provide any competent

summary judgment evidence that similarly situated faiths [we]re treated differently from

Rastafarians.").   In his complaint, Morris pleads that the DOC no longer allows Rastafarian

inmates to attend services or wear religious articles, and that the DOC "shows favoritism to the

Islamic, Christian, and Jewish faiths."  ECF No. 12, ¶¶ 11, 13.[8]  These threadbare allegations

cannot support a cause of action under the Equal Protection Clause.   Morris has not identified

any service allegedly denied to Rastafari inmates, let alone comparable ones that are permitted to

inmates of other faiths.   Other than the one instance where his religious crown was confiscated,

Morris has not identified an instance where any religious item or practice has been denied to a

Rastafari inmate.   Moreover, Morris acknowledged in his brief that other Rastafari inmates are

permitted to wear their religious crowns.  *See* ECF No. 22.   Thus, his brief belies that SCI-

---

[8] The Court notes that in his response in opposition to the motion to dismiss, Morris negates this allegation by stating: "[n]one of the other Rastafari inmates were forced to throw out their sacred religious crowns and that constitutes that the plaintiff was discriminated against based on religion when all other Rastafari inmates were allowed to keep their crowns."  ECF No. 22, ¶ 5(C)(1).   While the Court does not incorporate new facts alleged in a responsive pleading into its assessment of the sufficiency of the complaint, Morris's conflicting allegations further undermine the validity of his equal protection claim.

Albion bars all Rastafari religious practice and implies that something particular to his crown prompted Scheuer to designate it as contraband. Accordingly, Morris's Equal Protection claim must be dismissed against all Defendants.

V.      Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, amendment may cure many of the complaint's deficiencies. The legal defects in Morris's claims against DOC and his claims for money damages against Scheuer and Rev. Hafeli in their official capacities cannot be cured by amendment and those claims will be dismissed with prejudice. Morris may be able to allege additional facts to support his First Amendment and RLUIPA claims against Rev. Hafeli in his individual capacity. Accordingly, those claims will be dismissed without prejudice.

VI.      Conclusion

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 16) Morris's complaint is GRANTED in part and DENIED in part as follows:

- The motion is DENIED as to Morris's First Amendment claims against Scheuer in her individual capacity and as to his RLUIPA and First Amendment claims for injunctive relief against Scheuer in her official capacity;

- The motion is GRANTED as to all claims against Rev. Hafeli,, but Morris's First Amendment and RLUIPA claims are dismissed without prejudice and with Morris

being granted leave to file an amended complaint consistent with the foregoing

Opinion within twenty days;

- The motion is GRANTED as to all claims for money damages against Scheuer and Rev. Hafeli in their official capacity, which claims are dismissed with prejudice; and

- The motion is GRANTED as to Morris's equal protection claims and, as this claim is asserted only against the DOC, that claim is dismissed with prejudice as to the DOC.  An appropriate order follows.

DATED this 17th day of February, 2023.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE